[No. G000068. Fourth Dist., Div. Three. May 31, 1985.]

KRALOW COMPANY et al., Cross-complainants and Appellants, v.
SULLY-MILLER CONTRACTING COMPANY et al.,
Cross-defendants and Respondents.

**Counsel**

Robert W. Gibbs for Cross-complainants and Appellants.

Drummy, Garrett, King & Harrison, Alan I. White, John C. Murphy, Hagenbaugh & Murphy, John S. Nelson and Stephen A. Rosa for Cross-defendants and Respondents.

**Opinion**

**TROTTER, P. J.**—Appellants and cross-complainants, the Kralow Company and David W. Prizio, Inc., joint venturers doing business as Western

States Industrial-Number 2 (Western States), appeal from the granting of a partial summary judgment on their amended cross-complaint. The partial summary judgment was granted in favor of cross-defendants and respondents Sully-Miller Contracting Company (Sully-Miller) and Mac-B, Ltd. (Mac-B) on the ground that the causes of action set forth in Western States' amended cross-complaint were barred by the two year statute of limitations of Code of Civil Procedure section 339, subdivision 1.[1]

In June 1977, Western States entered into an agreement with the Brea Redevelopment Agency, City of Brea (the Agency). Pursuant to the agreement, Western States was to develop an industrial commercial complex within a redevelopment area in the City of Brea, and the Agency was to complete certain public improvements for the industrial complex, including streets, curbs, gutters, and sewer and water lines (the public improvements). The agreement provided that "[Western States] shall have no right to interest or damages for delay in Agency's performance hereunder, but the same shall be subject to the remedy of specific performance only." The Agency contracted with Sully-Miller to construct the public improvements. Sully-Miller subcontracted with Mac-B to complete a certain portion of the work.

The public improvements were not completed until June 28, 1978. On June 22, 1979, Western States filed a complaint against the Agency for breach of contract, breach of the implied covenant of good faith and fair dealing, and deceit. Neither Sully-Miller nor Mac-B was named as parties to the complaint, nor was the complaint directed against any Doe defendants. Thereafter, the Agency cross-complained for indemnification against Sully-Miller, which in turn cross-complained for indemnification against Mac-B. Mac-B cross-complained against Sully-Miller and Western States, among others, for indemnification.

On November 18, 1980, Western States answered Mac-B's cross-complaint and cross-complained against Sully-Miller and Mac-B. Several months later, Western States filed an amended cross-complaint which contained cross-claims for negligence and intentional tort. In its negligence cross-claim, Western States alleged the following acts and omissions of Mac-B and Sully-Miller caused "improper soil compaction and other patent deficiencies" in the public improvements: Mac-B failed to provide adequate personnel and equipment to accomplish its work; Sully-Miller was chargeable with Mac-B's acts and omissions since Mac-B was Sully-Miller's agent and acted within the course and scope of such agency; Sully-Miller knew or had reason to know of Mac-B's deficient work on prior jobs yet nevertheless selected Mac-B to be its subcontractor; Sully-Miller did not suffi-

---

[1] All statutory references are to the Code of Civil Procedure.

ciently supervise Mac-B's work on the job in question; Sully-Miller itself performed patently deficient work, necessitating corrective work. Western States alleged that as a proximate result of the patent deficiencies and the acts and omissions of Sully-Miller and Mac-B the following occurred: (1) the public improvements were not completed until June 28, 1978, (2) it was prevented from completing the commercial complex until July 13, 1978, and (3) it suffered substantial damages, including additional direct and indirect construction costs; taxes, insurance, interest and other carrying costs; loss of use of cash proceeds and interest income that would have been generated from sales or, alternatively, loss of rental income; and impairment of credit with the resulting loss of profits as to other transactions.

Following their unsuccessful demurrers, both Mac-B and Sully-Miller answered Western States' amended cross-complaint, denying its allegations and stating affirmative defenses. Thereafter, Sully-Miller filed a motion for partial summary judgment on Western States' amended cross-complaint. Mac-B joined in the partial summary judgment motion. Sully-Miller argued Western States was damaged, if at all, by delays in construction, not by the alleged patent deficiencies and therefore Western States' claim was barred by the two year limitations period set forth in section 339, subdivision 1. Attached to the motion were copies of interrogatories served by Sully-Miller upon Western States, responses thereto, and excerpts from the deposition testimony of the construction supervisor on the project. In its responses to Sully-Miller's interrogatories, Western States indicated it did not spend any money to correct the alleged patently deficient work. David W. Prizio, the construction supervisor on the project, stated in his deposition that at the completion of the project, there were no patent deficiencies. He also stated Western States did not spend any money to cure compaction problems on the project.

Western States opposed the partial summary judgment motion, arguing that the four-year statute of limitations of section 337.1, subdivision (a), was applicable. Attached to its opposition papers was the declaration of its attorney, Robert W. Gibbs. He stated Sully-Miller and/or Mac-B improperly laid and sealed various pipes and improperly compacted soil, necessitating corrective work. According to Gibbs, this patently deficient work led to delays by the Agency in completing the improvements, in turn causing delays in the completion of Western States' buildings and their connection with the improvements. Gibbs also stated considerable discovery was elicited in support of Western States' contentions concerning Sully-Miller and/ or Mac-B's negligent and/or intentional acts or omissions which resulted in their patently deficient work.

Following extensive argument, the trial court granted Sully-Miller and Mac-B's motion for partial summary judgment and Mac-B's joinder motion.

In its minute order, the court stated it found Western States "had no damages from patent deficiencies when [the] project [was] substantially completed. The only items of damages suffered by [Western States] are covered by CCP 339." A judgment granting Sully-Miller and Mac-B's motion for partial summary judgment was entered.

■ On appeal, Western States contends the trial court erred in applying the two year statute of limitations of section 339, subdivision 1, to this case rather than the four year statute of limitations of section 337.1, subdivision (a).

Section 339, subdivision 1, sets forth a two-year statute of limitations for an action upon a contract, obligation or liability not founded upon an instrument in writing, with certain exceptions not applicable here. Section 337.1 provides in pertinent part: "(a) Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following:

"(1) Any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to, or survey of, real property;

"(2) Injury to property, real or personal, arising out of any such patent deficiency; or

"(3) Injury to the person or for wrongful death arising out of any such patent deficiency.

". . . . . . . . . . . . . . . . . . . . . . . .

"(c) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action.

". . . . . . . . . . . . . . . . . . . . . . . .

"(e) As used in this section, 'patent deficiency' means a deficiency which is apparent by reasonable inspection."

Western States contends the four year limitation period of section 337.1 is controlling because the claims in its amended cross-complaint are for damages from patent deficiencies in construction work. Western States ar-

gues its amended cross-complaint is directed toward Mac-B and Sully-Miller's patently deficient soil compaction and other patently deficient work, which in turn damaged Western States by causing it to incur additional construction costs and other expenses and losses.[2]

Western States argues its position is supported by *Nicholson-Brown, Inc.* v. *City of San Jose* (1976) 62 Cal.App.3d 526 [133 Cal.Rptr. 159] (disapproved on a point not relevant here in *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815, fn. 18 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642]). In *Nicholson-Brown,* the City of San Jose (the City) retained Welton Beckett and Associates (Welton Beckett) to prepare plans and specifications for the construction of a new police administration building. The construction contract was awarded to Nicholson-Brown and designated Welton Beckett as the architect. During construction, problems developed regarding the exterior concrete finish and other concrete used for the building and changes from the original plans and specifications regarding procedures and mix of the concrete were made. On November 26, 1968, Welton Beckett, at the direction of the City, suspended work on the exterior concrete finish. Nicholson-Brown claimed it had sustained additional costs as a result of the suspension and the changes in the plans and specifications for the building. It filed a claim against the City and, following a number of meetings between all the parties, filed a complaint against the City and Welton Beckett on December 8, 1970. Following a jury trial, the trial court rendered judgment for Nicholson-Brown and against the City and Welton Beckett for $85,000. The trial court awarded the City a judgment of indemnity against Welton Beckett. All parties appealed.

On appeal, Welton Beckett contended the action against it should have been barred by section 339, subdivision 1. The appellate court stated, "[a]s a general rule, this two-year statute of limitations is applicable to negligent performance of professional services which do not involve injuries to persons or real or tangible personal property. [Citations.] But Code of Civil Procedure section 337.1, subdivision (a), deals more specifically with the present case; it provides a four-year statute of limitations for the recovery of damages 'from any person performing or furnishing the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to real property . . .' where there is '(1) Any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction . . . .'" (*Nicholson-Brown, Inc.* v. *City of San Jose, supra,* 62 Cal.App.3d at pp. 532-

---

[2]Western States admits in its opening brief "had Appellants' claims not been generated by Respondents' deficient construction work, the claims asserted in the amended cross-complaint would very possibly have fallen within the miscellaneous tort categories covered by Code of Civil Procedure § 339(1)'s two-year period of limitations."

533.) The court concluded ". . . the four-year limitation of section 337.1 rather than the two-year limitation of section 339, subdivision 1, applies to cases of architectural malpractice. As Nicholson-Brown's cause of action obviously accrued at some point between August and November 26, 1968 [the date Welton Beckett suspended work on the exterior concrete finish], and a complaint was filed on December 8, 1970, the trial court was correct in its determination that the cause of action against Welton Beckett was not barred." (*Id.*, at p. 533.)

Western States argues *Nicholson-Brown* supports its position that section 337.1 applies to all claims arising from patently deficient construction work, regardless of the theory of recovery. However, the facts in *Nicholson-Brown* are ambiguous at best. In that case, Welton Beckett's work on the concrete finish of the building was suspended; however, it is unclear whether such work was ever resumed. Therefore it is impossible to determine whether Nicholson-Brown was suing for patent deficiencies in existence upon substantial completion as well as additional costs as a result of the suspension and the changes in the plans and specifications for the building, or whether Nicholson-Brown was suing only for additional costs as a result of the suspension and changes in the plans.

To the extent that *Nicholson-Brown* stands for the proposition that a plaintiff may recover for all claims arising from patently deficient construction work, regardless of whether or not those claims existed upon substantial completion of the work, we decline to follow it. Although we have been unable to find any legislative history regarding section 337.1, and the parties have cited us to none, we believe the intent of the Legislature in enacting section 337.1 was to provide a cause of action for patent deficiencies existing upon substantial completion of a project. Here, Western States has admitted it seeks damages solely for delay, not for patent deficiencies which still existed upon completion of the project. We hold that Western States' claim does not fall within the purview of section 337.1.

■ For the first time on appeal, Western States argues that even if this court holds the two year statute of limitations (§ 339, subd. 1) applies, its amended cross-complaint was nevertheless timely because it relates back to the time its complaint against the Agency was filed in June 1979. Even assuming this argument can properly be raised now, it affords no relief to Western States because the relation-back doctrine applies "[w]here a complaint sets forth, or attempts to set forth, a cause of action against a defendant designated by fictitious name and his true name is thereafter discovered and substituted by amendment . . . ." (*Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 599 [15 Cal.Rptr. 817, 364 P.2d 681].) The relation-back doctrine is inapplicable here, where

Western States attempts to relate back an amended cross-complaint to a complaint which failed to name Sully-Miller, Mac-B or any Doe defendants.

The judgment granting Sully-Miller and Mac-B a partial summary judgment on Western States' amended cross-complaint is affirmed.

Sonenshine, J., and Wallin, J., concurred.